KELLY, Judge.
 

 Mary Elizabeth Mills, the former wife, appeals the final judgment dissolving her marriage to Darrell John Mills, the former husband. We reverse because the trial court erred in valuing and dividing the marital assets, in setting the amount of permanent alimony, and in failing to make proper findings regarding attorney’s fees.
 

 Equitable Distribution
 

 Shortly before the parties separated, the former husband sold a portion of his business for a total payout of $1,355,796. The former wife argues the trial court’s equitable distribution award must be reversed because the court distributed only a portion of the sale proceeds. She also contends the trial court erred when it awarded her funds that were depleted during the dissolution proceeding. We agree that the trial court erred in both respects and accordingly, we reverse the equitable distribution award.
 

 The parties offered the trial court two different methods for valuing the proceeds from the sale of a portion of the former husband’s business. The former wife’s accountant valued the net proceeds of the sale as a whole without taking into account assets acquired with a portion of the sale proceeds. He arrived at the net proceeds figure of $1,296,496 by taking the sale price, adding in interest earned on the sum, and deducting taxes and money that he calculated had been used in operating the former husband’s business.
 

 In contrast, the former husband’s accountant started with the net proceeds, and then deducted the money the parties had used to buy a condominium and the funds the former husband had used to pay income taxes, build an office building, purchase office furniture, a company automobile, and software for his business. Additionally, he testified that during the course of the parties’ separation, the former husband had made payments totaling $444,246 to the former wife. The remaining proceeds were in a money market account valued at $218,040 at the time of the final hearing.
 

 Because the former wife’s accountant valued the sale proceeds as a whole rather than by accounting for assets purchased with the proceeds, he calculated that the former husband’s business was worth $60,000. That figure represented the corporate assets less liabilities, but it did not include any assets purchased with proceeds from the sale. In contrast, the former husband’s accountant valued the business at $593,000, a figure that included the
 
 *674
 
 assets purchased with the sale proceeds. The former husband’s accountant agreed with the $60,000 value if the assets acquired with the sale proceeds were valued separately.
 

 The parties’ equitable distribution proposals reflected their different approaches to valuing the sale proceeds. In his equitable distribution plan, the former husband proposed that the $444,246 he had paid to or on behalf of the former wife be allocated to her along with the condominium. He allocated the money market account to himself. He allocated his business to himself and valued it at $60,000, which was the figure suggested by both parties’ accountants, provided the assets purchased with the sale proceeds were valued separately. His proposal did not include any of those assets, however.
 

 In her equitable distribution scheme, the former wife included as a marital asset the proceeds of the sale, plus interest, less taxes and money that her accountant determined was used in the operation of the former husband’s business. That resulted in a figure of $1,214,050, which she allocated to herself. Consistent with her approach of valuing the sale proceeds as a whole rather than valuing the assets purchased with the proceeds, the former wife’s proposal did not include a value for the money market account, the condominium, or the assets acquired by the business.
 

 The trial court did not accept either party’s proposal in its entirety. It did not value the sale proceeds in the manner proposed by the wife, but instead distributed the money market account, the condominium, and the husband’s business. It valued the former husband’s business at $60,000, which was the value of the business if the assets purchased with the sale proceeds were valued separately. The court did not, however, include those assets in its distribution scheme. The result was a distribution plan that did not identify and distribute all the marital assets. This was error.
 
 See
 
 § 61.075(3)(a), Fla. Stat. (2006);
 
 Lanier v. Lanier,
 
 861 So.2d 457, 458 (Fla. 2d DCA 2003) (holding that in contested marriage dissolution proceedings the trial court is required to enter written findings of fact identifying and valuing marital assets).
 

 Nor did the trial court allocate the $444,246 to the former wife as suggested by the former husband. The trial court found that those funds were used to pay the mortgage and upkeep on the marital residence, health insurance for the former wife, attorney’s fees for the former wife, and “other miscellaneous and personal expenses of the former wife.” Based on this, the trial court stated that it considered the payments to be part temporary spousal support, part attorney’s fees and costs, and the balance to be a partial prejudgment marital asset distribution. However, it made no finding specifying how much of the $444,246 should be allocated to these various categories.
 

 The absence of this finding is significant here because the trial court’s distribution plan favored the former husband by approximately $74,000, and the trial court looked to the $444,246 the former wife had already received and found that a portion of that sum was a “partial prejudgment marital asset distribution,” and that it “more than equalizes the difference” in the amounts allocated to the parties. Because the court did not specify how much of the $444,246 constituted prejudgment asset distribution, we are unable to determine if the trial court’s conclusion that the distribution equalized the parties’ positions is supported by the evidence.
 
 Id.
 
 (noting that written findings of fact identifying and valuing marital assets are necessary so that “the parties or reviewing court may discern the rationale for the distribution
 
 *675
 
 scheme employed”). Nor can we determine whether, as the former wife contends, the court included in the distribution assets that were used for support, living expenses, or litigation expenses. If it did, this would be error because marital assets used to pay for support, living expenses, and litigation expenses should not be included in an equitable distribution scheme in the absence of misconduct.
 
 See Austin v. Austin,
 
 12 So.3d 314, 316-17 (Fla. 2d DCA 2009).
 

 Given the forgoing, we must reverse the equitable distribution award. On remand if the trial court includes any prejudgment asset distribution in its equitable distribution award, it must specify the amount it is including, and that amount must be supported by the evidence that was offered at the final hearing. Similarly, if it includes sums paid for support, living expenses, or litigation expenses, it must specify the amount allocated to each and it must justify the awards with a finding of misconduct that is supported by the evidence offered at the final hearing.
 

 Because the trial court must reconsider the equitable distribution scheme, we also note the following errors in the trial court’s findings with regard to the sale proceeds. The trial court subtracted “a commission split back to the purchaser” from the total $1,355,796 proceeds. This figure was not testified to at trial, and it does not appear in the former husband’s exhibit detailing the distribution of the business sale proceeds.
 
 [1]
 
 The trial court also subtracted from the proceeds all of the income taxes the parties paid through 2006 even though there was no evidence that the former wife was liable for all of the tax liability incurred subsequent to the date of filing in May of 2006.
 

 Alimony
 

 The trial court found that the former husband’s net monthly income for purposes of determining his ability to pay support was $7416. In arriving at that figure, the trial court did not include the former husband’s business income or his reimbursed and in kind payments that reduced his living expenses. This was error. As the Florida Supreme Court explained in
 
 Zold v. Zold,
 
 in determining the amount of alimony, the trial court must consider “ ‘[a]ll sources of income available to either party.’” 911 So.2d 1222, 1228 (Fla.2005) (quoting § 61.08(2)(g));
 
 see Yangco v. Yangco,
 
 901 So.2d 217, 219 (Fla. 2d DCA 2005). Section 61.046(7) broadly defines income as follows:
 

 “Income” means any form of payment to an individual, regardless of source, including, but not limited to: wages, salary, commissions and bonuses, compensation as an independent contractor, worker’s compensation, disability benefits, annuity and retirement benefits, pensions, dividends, interest, royalties, trusts, and any other payments, made by any person, private entity, federal or state government, or any unit of local government.
 

 Because the trial court did not include the value of the former husband’s business income or the value of in kind payments made on his behalf when it determined the former husband’s ability to pay, we must reverse the award of alimony.
 
 See Dep’t of Revenue v. Hinnerschietz,
 
 850 So.2d 625, 626-27 (Fla. 2d DCA 2003);
 
 Cozier v. Cozier,
 
 819 So.2d 834, 836 (Fla. 2d DCA
 
 *676
 
 2002);
 
 Jones v. Jones,
 
 679 So.2d 1270, 1271 (Fla. 2d DCA 1996);
 
 Smith v. Smith,
 
 575 So.2d 228, 228-29 (Fla. 2d DCA 1991).
 

 For the purposes of determining business income on remand, we note that this court has. stated that to determine business income the trial court must subtract from the gross receipts ordinary and necessary expenses required to produce income.
 
 Smith,
 
 575 So.2d at 228-29. Here, the former husband’s financial affidavit included only his salary; thus, he presented no evidence as to what his business income was for the purpose of determining his ability to pay alimony. The former wife’s accountant, however, offered testimony regarding the former husband’s business income including detailing expenses the former husband had deducted from the gross receipts of his business that were not ordinary and necessary and therefore should have been included in calculating the former husband’s business income. The former husband’s accountant, as well as the former husband, admitted that at least some of the items were not ordinary or necessary business expenses thus warranting their inclusion in the calculation of the former husband’s business income.
 

 Because the trial court will have to reconsider the alimony award on remand, we also address the former wife’s argument that the trial court erred in determining the amount of her need. A trial court should determine the amount of alimony in accordance with the parties’ standard of living during the marriage.
 
 See, e.g., Laz v. Laz,
 
 727 So.2d 966, 967 (Fla. 2d DCA 1998). “In determining the amount of alimony, the trial court should ensure that each party’s standard of living comes as close as possible to the prior lifestyle, given the available financial resources.”
 
 Griffin v. Griffin,
 
 906 So.2d 386, 389 (Fla. 2d DCA 2005). Here, it appears the amount of alimony awarded in the final judgment was insufficient to meet the former wife’s needs. It also appears the trial court did not base the award on the standard of living during the marriage but rather based on a lifestyle far below the standard enjoyed during the marriage. If that is the case, it would be error. We have to speculate, however, because the trial court made no finding regarding the former wife’s need. On remand, the trial court should include findings regarding both the former wife’s need and the former husband’s ability to pay.
 

 Attorney’s fees
 

 The trial court denied the former wife attorney’s fees without determining the actual amount of fees incurred, finding that the prejudgment award of $444,246 was sufficient to cover the former wife’s fees. Because recalculation of the equitable distribution and alimony awards will result in a change in the parties’ overall financial picture, the trial court must also reconsider the former wife’s request for attorney’s fees. In doing so the court must properly make factual findings as to a reasonable amount of the former wife’s fees and the parties’ relative financial positions to pay those fees.
 
 See
 
 § 61.16;
 
 Dwyer v. Dwyer,
 
 981 So.2d 1254, 1258 (Fla. 2d DCA 2008).
 

 Accordingly, we reverse and remand for further proceedings consistent with this opinion.
 

 WHATLEY and NORTHCUTT, JJ„ Concur.
 

 [1]
 

 . The former husband’s written summation included an attachment that purported to be his trial exhibit number seventeen, and that attachment included the "commission split back.” This attachment, however, differs from the exhibit actually introduced into evidence at trial. The exhibit offered into evidence at trial did not include, among other things, the commission figure identified by the trial court in the final judgment.